IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PATRICIA WILKESON                                                    CV. 07-3062-AC

                Plaintiff,                              FINDINGS AND
                                                                     RECOMMENDATION

     v.

MICHAEL J. ASTRUE,
Commissioner of Social Security

                Defendant.
_____

ACOSTA, Magistrate Judge:

      Plaintiff Patricia Ann Wilkeson ("Wilkeson") filed this action under section 205(g) of the

Social Security Act (the "Act") as amended, 42 U.S.C. §405(g), to review the final decision of the

Commissioner of Social Security (the "Commissioner") denying her Social Security disability

insurance benefits and widow's insurance benefits ("Benefits").  Wilkeson asserts that the

Commissioner failed to adequately examine the medical records, her testimony, and the opinion of

her treating physician, and she asks this court to remand this matter.

PROCEDURE

On or about February 8, 2005, Wilkeson filed an application for Benefits alleging an onset date of February 2, 2005.  The application was denied initially and on reconsideration, and again by the Administrative Law Judge (the "ALJ") after a hearing.  The Appeals Council denied review and the ALJ's decision became the final decision of the Commissioner.

FACTS

Wilkeson is 61 years old.  She received her high school equivalency diploma in 1965.  Her past relevant work experience includes cashier, office assistant and receptionist.  She has not been involved in a successful work attempt since February 2, 2005.  She alleges disability because of osteoporosis, degenerative osteoarthritis, migraine headaches, and chronic anxiety.  Wilkeson meets the insured status requirements entitling her to disability insurance benefits through June 7, 2009.  Wilkeson's husband, Robert Bernard Wilkeson, passed away on March 11, 2000.  The prescribed period for entitlement to widow's insurance benefits ended on March 31, 2007.

**Testimony**

At the hearing, Wilkeson testified that her last employment was part-time clerical work for an accountant during tax season.  She had trouble with the job because it required too much standing.  She is concerned that she might not be able to successfully perform a sedentary job because she is unable to sit for long periods of time and cannot lift, stoop, bend, or file, and she is afraid go out in the winter because of slippery roads and sidewalks due to icy or bad weather.

Wilkeson described her current daily activities as physical therapy twice a week, walking around in her house and doing floor exercises to help build up her muscle strength.  She needs to change positions on a regular basis and often uses a heating pad.  She carries her groceries into her

house in small loads (about 15 pounds) because she must park her car some distance from her house. For similar reasons, she does two small loads of laundry a week. One of the reasons she spends so much time at home is her fear of falling and breaking a bone.

### Medical Evidence

Wilkeson lists Roger R. Cummins, P.A.-C[1], as her treating physician for her back pain. In November 2004, Cummins interpreted three x-ray views of Wilkeson's lumbar spine as follows:

> AP view shows no obvious soft tissue masses or densities. Bony anatomy is in good alignment with some lateral facet degenerative changes and posterior fact degenerative changes at L4/5, 5/S1. Mild degenerative osteoarthritic changes in the SI joints bilaterally. In the lateral view good posterior anterior alignment. She has moderate lumbar lordosis with quite a L4/5, 5/S1 angle. Disk spaces are slightly narrow with mild anterior osteophytic lipping of the lumbar spine. Posterior articulating degenerative changes at L4/5, 5/S1. Her bone in the lateral spot and standing lateral is very osteopenic in appearance by x-ray.

R. at 228). Wilkeson reported the pain was aggravated by standing on a concrete floor and lifting. Cummins indicated that he would write a note to Wilkeson's employer recommending a change in her work environment to be "off the concrete floor and constant standing and lifting." (R. at 227). He recommended back exercises and prescribed Flexeril.

On February 4, 2005, Cummins reviewed x-rays of Wilkeson's pelvis, hips and knees and noted mild to moderate degenerative osteoarthritis of the lower spine, milder to moderate degenerative changes to the right hip, mild degenerative changes to the sacroiliac joint and very mild degenerative osteoarthritis of the medial compartments of the knees. He prescribed a trial of Talivan and set up physical therapy for back pain. On March 10, 2005, Wilkeson reported good results after four weeks of physical therapy. However, on April 21, 2005, she informed Cummins that she was

---

[1]P.A.-C stands for Physician's Assistant - Certified.

not working because the cashier work aggravated her low back pain.  Cummins recommended that Wilkeson not return to work for three months.  On July 13, 2005, Cummins felt that Wilkeson could return to work on July 30, 2005, for four to eight hours a day up to 24 hours per week with at least a 15-minute break every two hours.

Richard Alley, M.D., reviewed Wilkeson's medical records and determined that she suffered from disorders of the back (discogenic and degenerative) and other disorders of bone and cartilage (osteoporosis), but was not disabled through May 9, 2005.  He opined that Wilkeson could lift 10 pounds frequently and 20 pounds occasionally; stand, walk, and/or sit about six hours in an eight-hour workday; and was otherwise not limited.  The diagnosis and finding of no disability was affirmed by J. S. Pritchard, D.O., on November 1, 2005, with the additional limitation of only occasional stooping and crouching.

On February 14, 2007, Cummins compared new x-rays to some taken in December 1998.  He noted advanced osteoporosis of the lumbar spine and left hip with minimal improvements in the overall density of the lumbar spine and major loss of density in the left hip.

**Vocational Evidence**

Frances Summers, vocational expert, attended the hearing.  After Wilkeson was questioned by her attorney and the ALJ, the ALJ posed the following hypothetical to Summers:

> I'm going to give you a hypothetical of an individual 60 years of age.  This individual has a GED education, past work as has been performed by the claimant.  She is limited to lifting 15 pounds occasionally, 10 pounds frequently.  She can stand, sit or walk for each a total of eight hours a day, but she would need to change position, excuse me, six hours in an eight hour day.  She would need to change position if on her feet after a half hour and be able to sit down for a half hour.  And, if she's sitting, she would need to change position just briefly after a half hour.  No limits on push/pull.  She should have only occasional stooping and crouching.  No prolonged standing, and by that I mean half an hour, on concrete surfaces.  Given those limitations, do you need any clarification?  I'm going to add in there that she

Page -4- FINDINGS AND RECOMMENDATION                                    *{SIB}*

should not be required to work in a slippery area either.

(R. at 294).  Based on this hypothetical and a clarification of the tasks Wilkeson performed in prior

jobs, Summers determined that Wilkeson could do her past relevant work of receptionist.  When

questioned about whether the receptionist job would allow Wilkeson to change positions as needed,

Summers responded that "[w]e're dealing with a continuum where some receptionists are totally free

to go anywhere they want.  Others are tethered to the desk with either the telephone, the computer

or a headset. (R. at 301).

## ALJ Decision

The ALJ determined that Wilkeson suffers from severe impairments in the form of

osteoporosis and degenerative disc of the lumbar spine and that, despite working part-time jobs

through April 13, 2006, she had not engaged in substantial gainful activity since February 2, 2005.

The ALJ found that Wilkeson:

> has the residual functional capacity to frequently lift 10 pounds and occasionally lift
> 15 pounds.  She can sit, stand and/or walk for six hours each during an eight-hour
> workday, but after being on her feet for 30 minutes she would need to sit for up to
> 30 minutes.  After sitting for an extended period, she would need to stand or walk
> briefly as needed for comfort. The claimant can occasionally stoop, crouch and
> crawl, but she cannot work on concrete for more than 30 continuous minutes, and she
> should not work on slippery surfaces.

(R. at 17).  The ALJ noted that the record did not contain any "medical opinion of disability." (R.

at 18).  He acknowledged that Cummins had opined that Wilkeson was able to work only on a part-

time basis in July 2005, but explained that "his limitations were based upon the demands of the

claimant's occupation as a cashier for Home Depot which required almost constant standing and

walking on concrete floors."  (R. at 18).  The ALJ then found, based on the testimony of the

vocational expert, that Wilkeson was capable of performing her past relevant work as a receptionist

provided she had the freedom to stand and move about after sitting for an extended period and that she was not disabled under the Act.

STANDARD OF REVIEW

The Act provides for payment of Benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1) (2006). The burden of proof to establish a disability rests upon the claimant. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir.), *cert. denied*, 519 U.S. 881 (1996). To meet this burden, the claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A) (2006). An individual will be determined to be disabled only if there are physical or mental impairments of such severity that the individual is not only unable to do previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A) (2006) .

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for Benefits because he or she is disabled. 20 C.F.R. § 404.1520 (2007); *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, Benefits are denied. 20 C.F.R. § 404.1520(b) (2007). Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c) (2007). If the claimant does

not have a severe impairment or combination of impairments, Benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d) (2007). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant has performed in the past. If the claimant is able to perform work which he or she has performed in the past, a finding of "not disabled" is made and Benefits are denied. 20 C.F.R. § 404.1520(f) (2007).

If the claimant is unable to do work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. *Distasio v. Shalala*, 47 F.3d 348, 349 (9th Cir. 1995). The claimant is entitled to Benefits only if he or she is not able to perform other work. 20 C.F.R. § 404.1520(g) (2007).

When an individual seeks Benefits, this court must review the case to see if the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g) (2006). Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). It is more than a scintilla, but less than a preponderance, of the evidence. *Id.*; *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Even if the Commissioner's decision is supported by substantial evidence, it must be set

aside if the proper legal standards were not applied in weighing the evidence and in making the

decision. *Id*. The court must weigh both the evidence that supports and detracts from the

Commissioner's decision. *Id*. The trier of fact, and not the reviewing court, must resolve conflicts

in the evidence, and if the evidence can support either outcome, the court may not substitute its

judgment for that of the Commissioner. *Gomez*, 74 F.3d at 970.

<u>DISCUSSION</u>

Wilkeson asserts that the ALJ erred by not properly considering the opinion of Cummins,

whom she refers to as her "treating physician." The Commissioner argues that Cummins is a

certified physicians' assistant, is not an acceptable medical source, and is not entitled to the weight

reserved for review of a treating physician.

To establish that she is suffering from a physical or mental impairment, Wilkeson must

provide evidence from medical sources. The Code of Federal Regulations (the "Code") defines

"acceptable medical sources" as: licensed physicians, optometrists and, podiatrists; licensed or

certified psychologists; and qualified speech language pathologists. 20 C.F.R. § 404.1513(a) (2007).

The Code then provides that:

> In addition to evidence from the acceptable medical sources listed in paragraph (a)
> of this section, we may also use evidence from other sources to show the severity of
> your impairment(s) and how it affects your ability to work. Other sources include,
> but are not limited to --
>
> > (1) Medical sources not listed in paragraph (a) of this section (for
> > example, nurse-practitioners, physicians' assistants, naturopaths,
> > chiropractors, audiologists, and therapists): * * *.

20 C.F.R. § 404.1513(d) (2007). Also included in "other sources" is educational personnel, social

welfare agency personnel and family, friends and caregivers. *Id*.

The opinions of acceptable medical sources are treated differently than opinions offered by

"other sources."  The opinion of a treating physician is given great, even controlling, weight because "the treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Ramirez v. Shalala*, 8 F.3d 1449, 1453 (9th Cir. 1993)(internal quotations omitted).  The ALJ must give "clear and convincing reasons" for rejecting the uncontroverted opinion of a treating physician and "specific, legitimate reasons" for rejecting a controverted opinion of a treating physician. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  The testimony of "other sources," such as friends and family members, is valuable, in large part, for their eyewitness observations of the claimant, which may "often tell whether someone is suffering or merely malingering." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The ALJ may not reject such testimony without comment, but he may reject it if it is inconsistent with medical evidence. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).  If an ALJ rejects "other source" testimony entirely, he must give reasons germane to the witness.  *Id.*

While the evidence from a treating medical source that is not listed as "acceptable" would appear to be entitled to more weight than that offered by a friend or family member, both this court and the Ninth Circuit have held otherwise.  The Ninth Circuit addressed the proper weight to give the opinion of a nurse practitioner in *Gomez v. Chater*, 74 F.3d 967 (9th Cir. 1996).   The court acknowledged the different treatment afforded "acceptable medical sources" and "other sources" in the Code and concluded that "[t]his permits the Commissioner to accord opinions from other sources less weight than opinions from acceptable medical sources." *Id.* at 970-71.  However, because the nurse practitioner worked closely with, under the supervision of, and as an agent of a licensed physician while treating the claimant, the court held that her opinion was properly considered  a part of the opinion of the licensed physician, who was an acceptable medical source.

The court relied on 20 C.F.R. § 416.913(a)(6), which allows a report from an interdisciplinary team that contains the evaluation and signature of an acceptable medical source to be considered acceptable medical evidence, and then reasoned that:

> While nowhere in the regulations is the term "interdisciplinary team" expressly defined, a plain reading of these sections taken together indicated that a nurse practitioner working in conjunction with a physician constitutes an acceptable medical source, while a nurse practitioner working on his or her own does not.

*Id*. at 971.  More recently, in *Brown v. Massanari*, 231 F.Supp.2d 1011, 1018 (D. Or. 2001), Judge Hogan  distinguished between a doctor and a physician's assistant and found that under 20 C.F.R. 404.1513, an ALJ's right to rely on the opinion of a physician's assistant is limited to his consideration of the severity of the impairments and how the impairments affect the claimant's ability to work.

Wilkeson argues that the ALJ failed to comply with 20 C.F.R. 404.1527 by failing to:  1) accord adequate weight to Cummins's opinions; 2) provide adequate reasons for the obvious rejection of Cummins's opinions; and 3) consider the factors set forth in the regulation to Cummins's opinions.  20 C.F.R. § 404.1527 provides guidelines for evaluating medical opinion evidence.  "Medical opinions" are defined as:

> statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

20 C.F.R. § 404.1527(a)(2) (2007).  Under this definition, an opinion from a medical provider other than an acceptable medical source does not qualify as a "medical opinion" and is not entitled to the deference awarded medical opinions under 20 C.F.R. § 404.1527.  Accordingly, Wilkeson's arguments that the ALJ erred by not complying with this regulation in considering Cummins's

opinions are not well taken.   That does not mean, however, that Cummins's opinions should be entirely disregarded.

The Social Security Administration (the "Administration") addressed the application of 20 C.F.R. § 404.1527 to opinions from medical sources who are not "acceptable medical sources" in SSR 06-03P, *Titles II and XVI: Considering Opinions And Other Evidence from Sources Who Are Not "Acceptable Medical Sources" In Disability Claims; Considering Decisions On Disability By Other Governmental And Nongovernmental Agencies*, 2006 WL 2329939 (S.S.A.).   The Administration reasoned that "[a]lthough the factors set forth in 20 C.F.R. 404.1527(d) and 416.927(d) explicitly apply only to the evaluation of medical opinions from "acceptable medical sources," they may be applied to opinion evidence from "other sources." *Id*. at *4.   The Administration cautioned that the factors, which include:

• How long the source has known and how frequently the source has seen the individual;

• How consistent the opinion is with other evidence;

• The degree to which the source presents relevant evidence to support and opinion:

• How well the source explains the opinion;

• Whether the source has a specialty or area of expertise related to the individual's impairment(s); and

• Any other factors that tend to support or refute the opinion,

are not relevant to every opinion from an alternative medical source and should be considered on a case-to-case basis. *Id*. at *4-5.   The fact that a medical opinion is from an acceptable medical source is a "factor that may justify giving that opinion greater weight," but does not necessarily mean that a medical opinion from an alternative medical source is not entitled to equal, or even

greater, weight when the other factors are taken into consideration.  The Administration explained:

> [D]epending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source.  For example, it may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.  Giving more weight to the opinion from a treating source does not conflict with the treating source rules in 20 C.F.R. 040.1527(d)(2) and 416.927(d)(2) and SSR 96-2p, "Titles II and XVI: Giving Controlling Weight To Treating Source Medical Opinions."

*Id*. at *5.

Cummins was Wilkeson's treating medical source and saw her approximately a dozen times over the course of a year during the relevant period.  His opinions were based on x-rays and Wilkeson's self-reporting of her limitations.  Cummins initially restricted her to limited standing and lifting, with no standing on a concrete floor.  When Wilkeson continued to have difficulty performing her cashier work on a concrete floor, Cummins recommended that she not return to work for three months and then only work for four-to-eight hours a day up to 24 hours per week with a 15-minute break every two hours.  As noted by the ALJ, Cummins's "limitations were based upon the demands of the claimant's occupation as a cashier for Home Depot which required almost constant standing and walking on concrete floors." (R. at 18).  Cummins did not opine on Wilkeson's general restrictions or what success she would have at a job other than a cashier.

The only medical opinions in the record from acceptable medical sources are those prepared by Dr. Alley and Dr. Pritchard, both of whom found that Wilkeson suffered from discogenic and degenerative disorders of the back as well as osteoarthritis.  Dr. Pritchard determined that, as a result of her impairments, Wilkeson was limited to: lifting 10 pounds frequently and 20 pounds

occasionally; standing, walking and/or sitting for about six hours in an eight-hour workday; and occasionally stooping and crouching.  The ALJ adopted the diagnosis and included all of the limitations in his hypothetical while adding additional restrictions of changing position every 30 minutes, not standing on concrete for more than 30 continuous minutes, and only occasionally crawling.  With the exception of the part-time work restriction, these limitations are consistent with those imposed by Cummins.  Accordingly, the ALJ properly considered the general limitations imposed by Cummins in his finding that Wilkeson was not disabled.

Wilkeson also argues that the ALJ erred in failing to contact Cummins for more information as required under 20 C.F.R. § 404.1512(e)(1).  In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when claimant is represented by counsel.  The ALJ's duty to develop the record further in a Social Security disability case is triggered when there is ambiguous evidence, or when the record is inadequate to allow for proper evaluation of evidence.  This duty derives in part from the basic premise that disability hearings are not adversarial in nature.  *See Sims v. Apfel*, 530 U.S. 103, 110-111 (2000).  It is also based on the regulatory directive that, in an administrative hearing, the ALJ "looks fully into the issues." 20 C.F.R. § 404.944 (2007).

As part of this duty, the ALJ has an obligation to take reasonable steps to ensure that issues and questions raised by medical evidence, particularly evidence from treating physicians, are addressed so that the disability determination is fairly made on a sufficient record of information, both favorable and unfavorable to the claimant. *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1999); *see also* 20 C.F.R. § 404.1527(c)(3) (2007)(providing steps to obtain additional evidence where medical evidence is insufficient to determine whether claimant is disabled); 20 C.F.R. § 404.1512(e)

(2007)(providing measures for obtaining additional information from treating doctors).  Finally, where it is necessary to enable the ALJ to resolve an issue of disability, the duty to develop the record may require consulting a medical expert or ordering a consultative examination.  *See* 20 C.F.R. §§ 404.1519a (2007); *see also Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir. 1998)(Where there were diagnoses of mental disorders prior to the date of disability found by the ALJ, and evidence of those disorders even prior to the diagnoses, the ALJ was required to call a medical expert to assist in determining when the plaintiff's impairments became disabling.)

Wilkeson bases this argument, in large part, on 20 C.F.R. § 404.1527(c)(3), which requires an ALJ to obtain additional information from treating or examining physicians when the evidence presented is insufficient to determine if the claimant is disabled.  For the reasons discussed above, Cummins is not an acceptable medical source and the requirements under 20 C.F.R. § 404.1527 do not explicitly apply to him.  In any event, Wilkeson has failed to establish that the ALJ lacked sufficient evidence, viewing the record as a whole, to reach a conclusion on the question of whether Wilkeson was disabled.  To the contrary, the evidence in the record clearly and adequately supports the ALJ's determination that Wilkeson retained the physical ability to perform the work of receptionist.

This court finds that the ALJ properly considered Cummins's opinion evidence, correctly identified and applied the limitations relevant to Wilkeson's general ability to perform work-related activities, and gave a valid reason for disregarding his part-time work restriction.  Additionally, this court is convinced that the record, viewed as a whole, adequately supports the decision of the ALJ and that additional evidence was not necessary.

<u>CONCLUSION</u>

The Commissioner's findings on Wilkeson's disabilities, considering the record as a whole, are supported by substantial evidence.  The decision of the Commissioner should be affirmed.

<u>Scheduling Order</u>

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due no later than **June 24, 2008**.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, any party may file a response within fourteen days after the date the objections are filed.  Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

DATED this 9th day of June, 2008.

/s/  John V. Acosta
JOHN V. ACOSTA
United States Magistrate Judge